JUDGE ABRAMS        13 CIV 7974

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN RODRIGUEZ,<br><br>                    Petitioner,<br><br>          -against-<br><br>THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER ANGELO MANGANIELLO, SHIELD #019247, POLICE OFFICER JOHN SOTO, SHIELD # 017446, POLICE OFFICER CANDREA, SHIELD # UNKNOWN, AND POLICE OFFICERS JOHN DOE 1 & 2, SHIELD ## UNKNOWN, ALL OF THE 45 PRECINCT,<br><br>                    Respondents. | 12 Civ. _____( )<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>RECEIVED<br>NOV - 8 2013<br>U.S.D.C. S.D. N.Y.<br>CASHIERS |

Plaintiff ALAN RODRIGUEZ, by and through his attorney, Steven H.

Goldman, Esq., for his Complaint alleges as follows:

PRELIMINARY STATEMENT

One night while sitting inside his Bronx home watching TV with his five-year-old

son, Alan Rodriguez hears arguing in front of his house. He walks to the window and

sees several police officers having a confrontation with a man who lives across the street.

The confrontation quickly escalates, and the police soon begin to beat the man. The man

screams when the police begin to beat him, and his screaming continues as more police

arrive and join the fray. At some point Mr. Rodriguez and his girlfriend's brother, Bryant

Serrano, walk onto the front steps of their house and continue to watch. They are approximately thirty feet from where the police are beating the man.

While they are watching, Mr. Rodriguez comments to Mr. Serrano that one of the officers is standing on his neighbor's face. A police officer overhears Mr. Rodriguez's comment and tells him to go inside. Mr. Rodriguez responds that he's on his own property and sees no reason why he should go inside the house. The officer again tells him to go inside his house and again he declines. At that point Officer Soto walks through the front gate to Mr. Rodriguez's house. Mr. Rodriguez tells Officer Soto that he's entering onto private property, to which Officer Soto replies, "Fuck your private property." Officer Soto then runs up the stairs to Mr. Rodriguez's house. Fearing that he is about to be attacked, Mr. Rodriguez enters his house. PO Soto bangs on the door and says, "Stay the fuck inside, this is not a game."

After Officer Soto walks back down the steps, Mr. Rodriguez opens the door a little and says from inside the house, "This incident is being recorded." Enraged, Officer Soto and approximately four other officers run up the steps. Officer Candrea kicks open the locked exterior door, breaking it. Mr. Rodriguez is standing on the other side of the interior door, blocking the door in an attempt to prevent the officers from entering his house. Officer Candrea uses a baton to break the glass panel in the interior door and gain entrance to the house. As Mr. Rodriguez is running to safety, an officer kicks him in the back and causes him to fall to the ground. Officer Soto proceeds to knee Mr. Rodriguez in the face while two other officers grab his hands. Officers are punching Mr. Rodriguez in the head and face. When Officer Soto twists Mr. Rodriguez's hand behind his back, Officer Candrea punches him in the side of the face.

Alan Rodriguez was viciously beaten by multiple police officers, arrested and falsely charged with a crime. This all happened because he had the audacity to tell Officer Soto that the officer's actions were being videotaped.

## THE PARTIES

1.    Plaintiff ALAN RODRIGUEZ is a citizen of the United States and a resident of Bronx County and the State of New York.

2.    Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, the City, acting through the New York Police Department ("NYPD"), it's agent, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD (and regulations of the NYPD patrol guide), and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

3.    At all times relevant hereto, defendants Angelo Manganiello, John Soto and Candrea were police officers employed by and/or under the supervision of the New York Police Department, acting in their capacity as agents, servants, and employees of the City of New York, and within the scope of their employment as such.

## JURISDICTION AND VENUE

4.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and New York state common law.

5.      The jurisdiction of the Court is predicated upon 28 U.S.C. §§ 1331, 1343(a) (3) and (4), 1367(a), and the doctrine of pendent jurisdiction for state law claims.

6.      The acts complained of occurred in the Southern District of New York, and venue is lodged in the Court pursuant to 28 U.S.C. § 1391(b).

7.      This action has been commenced within one year and three months after the happening of the event upon which the claim is based.

## JURY DEMAND

8.      Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

9.      On the date of this incident, Plaintiff was a thirty-one year old male living at 1732 Zerega Ave., Bronx, New York. The house contains three floors which constitute three apartments. Plaintiff lives on the first floor with his girlfriend, Joann Serrano, his six-year-old son, Jaden Rodriguez, Ms. Serrano's Grandmother, Ana Serrano, and her cousin Antonio Serrano. Other family members live on the other two floors, including Ms. Serrano's father, Jose Serrano, and his wife, Damaris Centeno, who live on the second floor, and Ms. Serrano's brother, Bryant Serrano, who lives in the basement.

10.     Plaintiff is employed as a driver for John Winkler, a process server.

11.     The charges in the instant case, Docket No. 2012BX049039, were

dismissed against Mr. Rodriguez on March 29, 2013. *See Exhibit 1, Certificate of*

*Disposition, Alan Rodriguez.*

12.     On August 23, 2012, between 11pm and 11:30pm, Plaintiff was in his

home watching TV with his five-year-old son, Jaden, when he heard the sound of people

arguing and yelling in the street in front of his house. Plaintiff went to the front window

to see what was happening in the street. There he saw a neighbor from across the street, a

man named Eric Campbell, arguing with several police officers. At some point the

officers began to physically subdue Mr. Campbell, and that encounter quickly escalated.

13.     Plaintiff walked to the front hallway of the house and turned on the

exterior lights. He then walked outside the house and joined Bryant Serrano, his

girlfriend's brother, who was standing on the steps videotaping what was happening to

Mr. Campbell. Present in the street were five to six police officers and three to four

patrol cars. Mr. Rodriguez watched as an officer dressed in plain clothes exited a car, ran

across to where Mr. Campbell was laying in the street and kicked Mr. Campbell in the

face.

14.     When Damaris Centeno called Plaintiff's name out the window, Plaintiff

walked back up the stairs and stood at the top of the steps. He had had no

communication with the police until this point, and was standing approximately thirty

feet from where the police were having an encounter with Mr. Campbell.

15.     After overhearing Plaintiff make a comment to Mr. Serrano about how an

officer was standing on Mr. Campbell's face, a dark-skinned officer standing on the street

told him to return inside his house. Plaintiff responded that he was on his own property

and saw no reason why he needed to go inside his house. The officer repeated that Plaintiff should go into his house, and he again declined to do so. Officer Soto then entered through the front gate of his house. As Officer Soto did this, Plaintiff told him that he was entering onto private property and that he did not have Plaintiff's permission to enter the property. Officer Soto responded, "Do you think I give a shit about private property? Fuck your private property." Officer Soto then ran up the stairs and chased Plaintiff into his house. Mr. Serrano followed Plaintiff into the house, after which Plaintiff closed and locked the house door.

16. When Officer Soto arrived at the top of the steps, he banged on the door and said, "Stay the fuck inside. This is not a game." After Officer Soto retreated down the steps, Plaintiff opened the door a crack and announced that the incident was being videotaped.

17. Plaintiff's announcement acted like a match in a tinderbox. Officer Soto and approximately four other officers sprinted up the front steps to Plaintiff's house. Officer's Soto and Candrea kicked open the locked external door to the house, breaking it.

18. Having just watched the officers beat Mr. Campbell, having heard Officer Soto's sentiments about private property, having watched Officer Soto chase him into his house and tell him to "stay the fuck inside," and then having watched as four or five officers sprint up his steps and break the external door to his house, Plaintiff had every reason to believe that it was the officers intention to harm him.

19. Fearful for his life, Plaintiff retreated behind the second door leading to the interior of the house. Since the second door had a hinge that prevented the door from

being quickly closed, Plaintiff was unable to fully close the door before the police arrived

at the door. Unable to secure the door shut, Plaintiff positioned his body on the other side

of the partially closed door to hold the door in place and block the police from gaining

entrance into his house. He was also screaming to his father-in-law, "Joey, they are

trying to get in. They are trying to hurt me."

20.    Officer Candrea used what may have been a collapsible baton to break the

glass window in the door, at which point the officers entered the interior of the house. As

Plaintiff attempted to retreat further into the house, an officer kicked him in the back,

causing him to fall to the floor.

21.    On the floor, Plaintiff instinctively curled up on the ground and covered

his face with his hands. Two officers pulled Plaintiff's hands from his face while Officer

Soto kneed him in the face approximately eight times. Plaintiff's nose began to bleed.

He was also punched in the head and face by officers Soto, Candrea and possibly Parea.

22.    Officer Soto twisted Plaintiff's hand behind his back while Officer

Candrea punched him in the face. Plaintiff was then handcuffed and removed from the

house.

23.    Plaintiff was taken to St. Barnabas Hospital for evaluation and treatment.

In addition to a bloody nose, his nose had a laceration, and he had various cuts and

bruises elsewhere on his body. Additionally, he suffered emotional and psychological

trauma, including an enduring fear of being gratuitously assaulted by the police.

24.    Plaintiff remained incarcerated for approximately twenty-four hours.

25.    Defendant officers lacked any legal justification for the beating they

inflicted on Plaintiff or the subsequent arrest. Plaintiff didn't interfere with the arrest of

Mr. Campbell or either threaten or actually assault any of the officers.  Nor did he resist

arrest.  The beating of Plaintiff was no less gratuitous that the arrest itself.

26.    As a result of the arrest and beating inflicted on Plaintiff by members of the

New York City Police Department, he suffered significant – and entirely unnecessary –

physical and psychological injuries, as well as pain and suffering, fear, emotional

distress, mental anguish and humiliation.

27.    The arrest of Plaintiff lacked probable cause, and was done maliciously,

falsely and in bad faith.  Defendants acted in wanton and reckless disregard for Plaintiff's

rights and emotional wellbeing.

28.    As a direct and proximate result of Defendants' unlawful conduct, Mr.

Rodriguez suffered and/or continues to suffer physical, emotional and psychological pain,

mental anguish and other losses.

29.    The City either knew or should have known that the Individual Defendants

were prone to use excessive and illegal force and were likely to engage in such excessive

and illegal force.

30.    This action has been commenced within one year and ninety days after the

happening of the event upon which the claim is based.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
#### (Against the Officer Defendants)

31.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set fourth at length herein.

32.   By the above, by using excessive force and assaulting him, and by failing to take steps to intercede and protect Plaintiff from the above, the Officer Defendants deprived Plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including but not limited to rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

33.   The Officer Defendants acted under pretense and color of state law in their individual and official capacities and/or within the scope of their respective employments as NYPD officers. Said acts by the Police Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured to him by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

34.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSED OF ACTION
### Assault & Battery
#### (Against All Defendants)

35.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

36.   The Officer Defendants intentionally, willfully, and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact, and intentionally did violent and/or menacing acts which threatened such contact to Plaintiff, and that such act(s) caused apprehension of such contact in Plaintiff.

37.   The City of New York, as the employer of the Police Officer Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

38.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

THIRD CAUSE OF ACTION
False Arrest
(Against All Defendants)

39.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

40.    The acts and conduct of the defendants constitute false arrest and false imprisonment under the laws of the State of New York. Defendants intended to confine Plaintiff and, in fact, did confine Plaintiff, and Plaintiff was conscious of the confinement. In addition, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

41.    Defendants Manganiello, Soto and Candrea were at all times agents, servants, and employees acting within the scope of their employment by New York City and the New York City Police Department, which are therefore responsible for their conduct.

42.    Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

FOURTH CAUSE OF ACTION
Negligence
(Against All Defendants)

43.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

44.    Defendants owed a duty of care to the Plaintiff.

45.    Defendants breached that duty of care by injuring Plaintiff in the course of his arrest.

46.    All of the foregoing occurred without any fault or provocation on the part of Plaintiff.

47.    Defendants, their officers, agents, servants, and employees were responsible for the harm that occurred to Plaintiff. The City of New York, as the employer of each of

the Officer Defendants, is responsible for the wrongdoing under the doctrine of respondeat superior.

48.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
### Negligent Hiring, Training, Discipline and Retention of Employment Services
### (Against Defendant City of New York)

49.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

50.   The City of New York, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff, or to those in a like situation, would probably result from this conduct.

51.   Upon information and belief, Officer Defendants were unfit and incompetent for their positions as police officers.

52.   Upon information and belief, the City of New York knew or should have known through the exercise of reasonable diligence that Officer Defendants were dangerous.

53.   Upon information and belief, the City of New York's negligence in hiring, training, disciplining, and retaining Police Officer Defendants proximately caused Plaintiff's lasting physical, mental, emotional and professional injuries and scars.

54.   Upon information and belief, because of the City of New York's negligent hiring, training, disciple, and retention of the aforementioned police officers, Plaintiff incurred significant and lasting physical, mental and professional injuries.

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues properly triable thereby.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a.   Compensatory damages in the amount to be determined at trial;
b.   Punitive damages against the individual Defendants in an amount to be determined at trial;

Dated: Bronx, New York

November 7, 2013

Steven H. Goldman, Esq.

190 E. 161 Street

Bronx, New York 10451

(718) 538-5743

Attorney for Plaintiff ALAN RODRIGUEZ

## INDIVIDUAL VERIFICATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          SS:

ALAN RODRIGUEZ, being duly sworn, deposes and says the
following: that he is the claimant in the within action;
that he has read the factual allegations contained within
the complaint, and that he confirms the accuracy of said
contents.


_____
SWORN TO BEFORE ME THIS 7TH DAY OF
November, 2013.

AVA G. GUTFRIEND
NOTARY PUBLIC-STATE OF NEW YORK
No. 02GU6290958
Qualified in Nassau County
My Commission Expires October 15, 2017


Alan Rodriguez, Claimant

INDEX NO.          YEAR:  2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

ALAN RODRIGUEZ,

    PLAINTIFF

VS                                         [JURY TRIAL]

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, POLICE OFFICER ANGELO
MANGANIELLO, SHIELD #019247, POLICE OFFICER
JOHN SOTO, SHIELD # 017446, POLICE OFFICER
CANDREA, SHIELD # UNKNOWN, AND POLICE
OFFICERS JOHN DOE 1 & 2, SHIELD ## UNKNOWN,
ALL OF THE 45 PRECINCT,

    DEFENDANTS

_____

Complaint

_____

Steven Goldman, Esq.
Attorney for Plaintiff

190 E. 161 Street
Bronx, New York 10451
(718) 538-5743